USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/28/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

UNITED STATES OF AMERICA,

                    05 Cr. 1285-02(RWS)

- against -

                    SENTENCING OPINION

WINSTON HARDING,

          Defendant.

----------------------------------------X

**Sweet, D.J.,**

          On May 12, 2006, defendant Winston Harding ("Harding") pled guilty to one count of conspiring in violation of 21 U.S.C. § 846 to distribute and possess with intent to distribute methamphet- amine in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)- (A). For the reasons set forth below, Harding will be sentenced to a term of imprisonment of 48 months, to be followed by a five-year term of supervised release. Harding will also be required to pay a mandatory special assessment of $100.

## Prior Proceedings

          Harding was arrested on September 8, 2005, and has remained in continuous custody since that date. An indictment was filed in the Southern District of New York on December 6, 2005, charging that from about June 2005 to about September 8, 2005, Harding and others conspired in violation of 21 U.S.C. § 846 to distribute and possess with intent to distribute fifty grams and

more of methamphetamine, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A). On May 12, 2006, Harding appeared before the Honorable Andrew J. Peck of this district and pled guilty to the charged criminal conduct in accordance with a plea agreement entered into with the Government. Harding's guilty plea was accepted by this Court on June 2, 2006, and he is scheduled to be sentenced on September 29, 2006.

## The Sentencing Framework

In accordance with the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005) and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed --

   (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B)  to afford adequate deterrence to criminal conduct;

   (C)  to protect the public from further crimes of the defendant; and

2

        (D)    to provide the defendant with needed educa-
                tional or vocational training, medical care,
                or other correctional treatment in the most
                effective manner;

    (3)   the kinds of sentences available;

    (4)   the kinds of sentence and the sentencing range
        established for --

        (A)    the applicable category of offense committed
                by the applicable category of defendant as set
                forth in the guidelines ...;

    (5)   any pertinent policy statement ... [issued by the
        Sentencing Commission];

    (6)   the need to avoid unwarranted sentence disparities
        among defendants with similar records who have been
        found guilty of similar conduct; and

    (7)   the need to provide restitution to any victims of
        the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all
the facts appropriate for determining a sentence, whether that
sentence is a so-called Guidelines sentence or not. See Crosby,
397 F.3d at 111.

## The Defendant

            Winston Harding was born on October 14, 1975, in
Washington D.C. His parents' marriage ended soon after he was
born, and Harding reports being treated as a "pawn" between them
during his childhood. For example, Harding recalls being taken to
Barbados by his father at a young age without his mother's consent,
only to be returned to his mother's care by his grandmother.

3

Without prior notice, Harding's father moved to Barbados when Harding was about seven years old, taking Harding's three paternal half-siblings with him. According to Harding, he has had minimal contact with his father since. Both Harding and his mother have indicated that Harding's abandonment by his father and the minimal contact he has had with his father have been a source of difficulty and strain for Harding.

By contrast, Harding maintains a very close and positive relationship with his mother, who raised him following his father's departure. Although his mother remarried when Harding was about thirteen years old, the marriage only lasted a few years. Following her divorce from her second husband, in 1998, Harding's mother relocated to Bronx, New York, where she maintains a supportive relationship with the defendant. According to his mother, Harding had moved to New York in 1995 to live with his maternal grandmother so that she would not be alone after her husband had passed away.

Harding has a history of learning disabilities and possible mental or emotional health problems. According to his mother, Harding was diagnosed with dyslexia and Attention Deficit Disorder (ADD) while in elementary school. He was prescribed Ritalin for a short period of time as a result, but was later taken off the drug by a psychiatrist and placed in therapy instead.

4

Harding was also placed in special education classes in which he remained throughout junior high school.

Harding maintains that although he was never clinically diagnosed, he was told by medical staff at a community clinic in 1998 that he is "slightly bipolar." He further reports that he was seen by medical professionals "on and off" throughout his childhood, although he has never been prescribed medication for a mental health condition. Harding recalls attempting to commit suicide at the age of nineteen.

Harding also has a long and unfortunate history of substance abuse. After trying marijuana for the first time in junior high school, Harding claims to have used marijuana continuously ever since. In approximately 2000, Harding also started using crystal methamphetamine ("crystal meth"), which he reports using regularly for about two years prior to his arrest for the instant offense. Harding also claims to have used Opium, phencyclidine (PCP), Ecstacy, and other drugs on a regular basis. Never having received substance abuse treatment in the past, Harding has expressed an interest in receiving such treatment in the future.

Harding indicates that he graduated from high school in 1994, after which he attended two different recording/film schools, switching schools in order to move to New York to be with his recently widowed grandmother. He graduated from the second of

5

these programs in 1997, obtaining an associates degree in audio engineering.  Harding reports that prior to his arrest, he was employed in the music business, including interning at several record labels and performing recording work for independent films on a freelance basis.

Although Harding has been arrested on five prior occasions, this represents the first known criminal conviction for this thirty-year-old defendant.

**The Offense Conduct**

The following description draws on the Presentence Investigation Report prepared by the Probation Office of the United State District Court for the Southern District of New York, dated August 29, 2006.  The specific facts of the underlying conduct are adopted as set forth in that report.

From about June 2005 through about September 8, 2005, Harding ordered crystal methamphetamine on more than one occasion from co-defendant Suzula Rose Bidon.  Bidon, who resided in Minnesota, mailed packages containing crystal methamphetamine to Harding, who resided in New Jersey.  Harding then packaged and distributed the crystal methamphetamine in the New York City area. Harding and Bidon are accountable for the distribution and

6

possession with intent to distribute approximately 105 grams of methamphetamine.

## The Relevant Statutory Provisions

The mandatory minimum term of imprisonment is ten years and the maximum term of imprisonment is a term of life, pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 846. In addition, a term of at least five years' supervised release is required if a sentence of imprisonment is imposed, pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 846. The applicability of these statutory minimums may be limited, however, in certain cases where the criteria set out in 18 U.S.C. § 3553(f)(1)-(5) are met.

Harding is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 846.

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determina-

7

tion that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The maximum fine is $4,000,000, pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 846. A special assessment in the amount of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Pursuant to 21 U.S.C. § 862(a)(1)(A), upon a first conviction for distribution of a controlled substance, a defendant may be declared ineligible for any or all Federal benefits for up to five years, as determined by the Court.

## The Guidelines

The March 27, 2006, edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to U.S.S.G. § 1B1.11(a).

The Guideline for violations of 21 U.S.C. § 846 is found in U.S.S.G. § 2D1.1. Based on the Presentence Investigation Report dated August 29, 2006, Harding is responsible for conspiring to distribute and possess with the intent to distribute approximately 105 grams of methamphetamine (actual). As specified in the Drug Quantity Table under U.S.S.G. § 2D1.1(c)(1), this amount of methamphetamine (actual) results in a base offense level of 32.

8

Based on his plea allocution, Harding meets the conditions set forth in U.S.S.G. § 5C1.2(a)(1)-(5), including: (1) that the defendant have no more than one Criminal History point; (2) that the defendant not be a leader, organizer, manager or supervisor of others in the offense; (3) that the defendant not possess a firearm in connection with the offense; (4) that the offense not result in death or serious bodily injury to an individual; and (5) that, by the time of sentencing, the defendant truthfully has provided the Government all information and evidence the defendant has concerning the offense or offenses.   Therefore, Harding is eligible for a two-level reduction pursuant to U.S.S.G. § 2D1.1(b)-(7).

Based on his plea allocution, Harding has also shown recognition of responsibility for the offense.   Pursuant to U.S.S.G. § 3E1.1(a), the offense is therefore reduced two levels. Further, because Harding's timely notification of his intention to plead guilty has allowed the Government to allocate its resources more efficiently, and because the offense level is 16 or greater, the offense level is reduced one additional level, pursuant to U.S.S.G. § 3E1.1(b).

The defendant's resulting adjusted offense level is 27.

Harding has no known criminal convictions.   Thus, Harding has a Criminal History Category of I.

Based on a total offense level of 27 and a Criminal History Category of I, the Guidelines range for imprisonment is 70 to 87 months. Because, according to the information available to the Government, the relevant statutory criteria of 18 U.S.C. § 3553(f) have been met, the Court in this case may impose a sentence in accordance with the applicable sentencing analysis, without regard to any statutory minimum sentence.

The Guidelines range for a term of supervised release is three to five years, pursuant to U.S.S.G. § 5D1.2(a)(1). Again, because the relevant statutory criteria of 18 U.S.C. § 3553(f) have been met, the Court in this case may impose a sentence in accordance with the applicable sentencing analysis, without regard to any statutory minimum sentence of supervised release.

A term of probation is not authorized, pursuant to U.S.S.G. §§ 5B1.1(b)(2) and 5C1.1(f).

The Guidelines fine range for the instant offense is from $12,500 to $4,000,000, pursuant to U.S.S.G. § 5E1.2(c)(3)-(4). Subject to the defendant's ability to pay, in imposing a fine pursuant to U.S.S.G. § 5E1.2(d)(7), the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release. The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $1,952.66 to be used for imprisonment, a monthly cost of $287.50

10

for supervision, and a monthly cost of $1,736.98 for community confinement.

Pursuant to U.S.S.G. § 5F1.6, the Court may deny eligibility for certain federal benefits of any individual convicted of distribution or possession of a controlled substance.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guideline analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary," as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103.   In particular, § 3553(a)(1) asks that the sentence imposed consider both "the nature and circumstances of the offense and the history and characteristics of the defendant," while § 3553(a)(2)(A) demands that the penalty "provide just punishment for the offense" that simultaneously "afford[s] adequate deterrence to criminal conduct" as required by § 3553(a)(2)(B).   Furthermore, pursuant to § 3553(a)-(6), the Court is also mindful of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

11

Considering the history and characteristics of the defendant pursuant to § 3553(a)(1), the Court takes note of the severity of the defendant's drug abuse problem. This problem may be exacerbated by any mental health conditions the defendant has experienced over his lifetime. Defendant has suffered both conditions without adequate treatment, if any, and has expressed interest in receiving treatment in the future. That these conditions likely contributed to the defendant's participation in the instant offense and may be ameliorated over the short-term through adequate treatment weighs in favor of imposing a non-Guidelines sentence.

Also pursuant to § 3553(a)(1), the Court takes note of the significant network that is ready to support Harding upon his release from prison. In addition to his mother, other members of the community have expressed to the Court their willingness to facilitate Harding's re-entry, including accepting him as a tenant and assisting him in finding employment. Such circumstances again weigh in favor of a non-Guidelines sentence.

Considering the need for the sentence to reflect the seriousness of the offense and to provide adequate general and specific deterrence, pursuant to § 3553(a)(2)(A) and (B), the sentence is also appropriate. Harding has no prior criminal convictions and has not been incarcerated prior to the instant offense. See United States v. Hernandez, No. 03 Cr. 1257-03 (RWS),

12

2006 WL 870933, at *4 (S.D.N.Y. Apr. 5, 2006); United States v. Arreaga, No. S303 Cr. 1121-02 (RWS), 2006 WL 278156, at *7 (S.D.N.Y. Feb. 2, 2006).

In addition to deterrence, rehabilitation also serves as a goal of punishment pursuant to § 3553(a)(2)(D), which allows the Court to consider whether the sentence imposed will "provide the defendant with needed . . . medical care, or other corrective treatment in the most effective manner." Given Harding's need for drug abuse treatment and mental health counseling, as well as Harding's eagerness to obtain such treatment, it is determined that imposition of a non-Guidelines sentence is appropriate to fulfill the rehabilitative goal of punishment and sentencing. See United States v. Rivera, No. 04 Cr. 959 (RWS), 2006 WL 1596814, at *4 (S.D.N.Y. June 9, 2006); Hernandez, 2006 WL 1596814, at *5; Arreaga, 2006 WL 278156, at *7.

Therefore, having considered all the factors set forth in § 3553(a), it is determined that a non-Guidelines sentence is warranted in the instant case.

## The Sentence

For the instant offense, Harding is hereby sentenced to 48 months' imprisonment, followed by a five-year term of supervised release. Harding is directed to report to the nearest Probation

13

Office within seventy-two hours of release from custody.    It is recommended that the defendant be supervised by the district of residence.

Since Harding has been detained without bail since his arrest, he is not a candidate for voluntary surrender pursuant to 18 U.S.C. § 3143(a)(2).

As mandatory conditions of his supervised release, Harding shall: (1) not commit another federal, state or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer.    The mandatory drug testing condition is suspended due to the imposition of a special condition requiring drug treatment and testing.

The standard conditions of supervision (1-13) shall be imposed, along with the following special conditions:

(1) Harding will participate in a program approved by the United States Probation Office, which program may include testing to determine whether he has reverted to using drugs or alcohol.  The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer.  Harding shall be required to contrib- ute to the costs of services rendered, in an amount determined by the probation officer, based on ability to pay or availability of third-party payment.

(2) Harding also shall participate in a mental health program approved by the U.S. Probation Office.  Harding shall continue to take any prescribed medications unless

14

otherwise instructed by the health care provider.
Harding shall contribute to the costs of services
rendered not covered by third-party payment, if the
defendant has the ability to pay.   The Court authorizes
the release of available psychological and psychiatric
evaluations and reports to the health care provider.

(3) The defendant shall submit his person, residence,
place of business, vehicle, or any other premises under
his control to a search on the basis that the probation
officer has reasonable belief that contraband or evidence
of a violation of the conditions of the release may be
found.   The search must be conducted at a reasonable time
and in reasonable manner.   Failure to submit to a search
may be grounds for revocation.   The defendant shall
inform any other residents that the premises may be
subject to search pursuant to this condition.

In consideration of all the factors set forth in 18
U.S.C. § 3572(a), it does not appear that the defendant is able to
pay a fine, and the fine in this case shall be waived.   A special
assessment of $100, payable to the United States, is mandatory and
shall be due immediately.

The terms of this sentence are subject to modification at
the sentencing hearing set for September 29, 2006.

It is so ordered.

New York, NY
September  27  , 2006

ROBERT W. SWEET
U.S.D.J.

15